# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KINDRA E. S.**[1] **,**

      **Plaintiff,**

  **v.**

                                              **Civil Action 2:23-cv-3622**
                                              **District Judge Edmund A. Sargus**
                                              **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,** *et al.***,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kindra E. S., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income Benefits ("SSI") and Social Security Period of Disability Benefits, Disability Insurance Benefits ("DIB"). The matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Specific Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 7) as supplemented (ECF No. 17–2). For the reasons that follow, the Court **AFFIRMS** the Commissioner of Social Security's non-disability determination and **OVERRULES** Plaintiff's Statement of Specific Errors.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.   BACKGROUND

Plaintiff protectively filed her SSI application in 2016, alleging that she became disabled on May 14, 2005. Plaintiff's claims were denied initially and on reconsideration, and, following hearings on November 27, 2018, and May 23, 2019, Administrative Law Judge, Timothy Keller ("ALJ Keller") issued an unfavorable determination on June 10, 2019 ("the first determination"). (R. 326–349.) After the first determination became final, Plaintiff sought judicial review, and in November 2021, the Court remanded this matter under sentence four of 42 U.S.C. § 405(g).

After ALJ Keller issued the first determination, but before this matter was remanded, Plaintiff filed her DIB application. The Appeals Council directed that Plaintiff's SSI and DIB applications be consolidated and that a new determination be issued on her consolidated claims. A new Administrative Law Judge ("ALJ") subsequently held a telephonic hearing on July 27, 2023, at which Plaintiff, represented by counsel, appeared. A vocational expert ("VE") also appeared and testified. On August 15, 2023, the ALJ issued a second unfavorable determination (R. 6071–6108), and it became final when the Appeals Council declined review.

Plaintiff seeks judicial review of the ALJ's second unfavorable determination. She contends that the ALJ erred when evaluating social interaction limits opined by state agency reviewers. (Pl.'s Statement of Errors 7–13, ECF No. 7.) The Commissioner correctly asserts that Plaintiff's contention of error lacks merit. (Df.'s Memo. in Opp., 5–13, ECF No. 14.)

## II.     THE ALJ's DECISION

The ALJ issued the second determination on August 15, 2023. At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial

gainful activity since her alleged onset date. (*Id.* at 6074.) At step two, the ALJ found that

Plaintiff had the following severe mental health[3] impairments: mild bipolar disorder; major

depressive disorder; moderate generalized anxiety disorder; borderline personality disorder;

anxiety; borderline personality disorder; posttraumatic stress disorder; severe dysthymic

disorder; and moderate to severe panic disorder. (*Id*. at 6075.) At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] Because Plaintiff's contention of error pertains to her mental health impairments, the Court's discussion is limited to the same.

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id*. at 6077.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[4] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except . . . . The claimant is able to perform simple, routine, repetitive tasks but not at a production rate pace (*e.g.*, assembly line work). She is able to perform simple work-related decisions. The claimant is able to frequently interact with supervisors and occasionally interact with the public and coworkers.

(*Id*. at 6081.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 6107.) At step five, the ALJ, relying on testimony from a VE, found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that she could perform, including such representative occupations as checker I, collator operator, and merchandise marker. (*Id.*) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act, from Plaintiff's August 11, 2016 application date, through the date of the decision. (*Id.* at 6108.)

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

---

[4] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when evaluating social interaction limits opined by state agency reviewers. (Pl's Statement of Errors 7–13, ECF No. 12.) Plaintiff's contention lacks merit.

"[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823–24 (S.D. Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; 20 C.F.R § 416.927(d),(f). "Consequently, opinions of one-time examining physicians and record-

5

reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F. Supp. 2d at 823–24. Nevertheless, "[even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's opinions wholesale.]" *Price v. Comm'r of Soc. Sec.*, 2:18-cv-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019) (quoting *Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015)). Nor is there a "legal requirement for an ALJ to explain each limitation or restriction he adopts, or conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford v. Comm'r of Soc. Sec*, 114 F. App'x 194, 198 (6th Cir. 2004).)

Before ALJ Keller issued the first determination, Plaintiff's file was reviewed initially by Robyn Murray-Hoffman, Ph.D., on January 20, 2017. (R. at 636–38.) Relevant here, Dr. Murray-Hoffman opined that Plaintiff was able to "interact superficially with coworkers" and that she should not have over the shoulder supervision or interactions with the public. (*Id*. at 638.) On May 4, 2017, Plaintiff's file was reviewed on reconsideration by Carl Tisher, Ph.D., who opined the same social interaction limits. (*Id*. at 656–58.)

On remand, the new ALJ reviewed both reviewers' opinions[5] and determined that they were entitled to "little weight." (*Id*. at 6101–02.) She wrote as follows:

> Due to the nature of the claimant's mental conditions and resulting limitations, the totality of the medical evidence of record convinces me that that the claimant was . . . less limited in the area of interacting with others. . . . [T]he evidence does reveal

---

[5] Plaintiff indicates that the state agency reviewers at issue "both" opined that Plaintiff was limited to superficial interactions. (Pl's Statement of Errors 7, ECF No. 12.) Accordingly, it appears that she only challenges the ALJ's assessment of the social interaction limits opined by Drs. Murray-Hoffman and Tisher. (*Id*. at 8, citing R. at 633, 653).)

that the claimant is able to perform simple and repetitive tasks and not work at a production rate pace, it also shows that the claimant is further limited to routine tasks while not having frequent interaction with supervisors, having occasional interaction with coworkers and the public, and performing only simple work-related decisions. . . . Furthermore, the evidence of record does not reveal that the claimant needs to be limited in the quality of interaction with others (i.e., "superficial" and "over the shoulder supervision") but rather the frequency while also not excluding total public interaction or requiring only "minimal" interaction with others.

*Id*. The ALJ further explained why these opinions were entitled to little weight, writing as

follows:

Therefore, this opinion is inconsistent with the medical evidence of record and the claimant's activities of daily living. For example, on October 18, 2016, the claimant . . . was cooperative . . . . (B4F/4-5). The claimant's speech was intelligible, she spoke in a normal pace, she had no looseness of thoughts or tangential thinking, she was talkative, she spoke in two to eight word sentences, her speech was 100% understandable, she initiated conversation frequently, and her receptive skills were good (B4F/4). . . On September 26, 2017, the claimant's general appearance was disheveled, her motor activity was decreased, her affect was tearful, she stated that she did not have a good memory, and her insight was limited (B15F/3-5). Her eye contact was within normal limits, her attitude was cooperative, her speech and language were normal, her thought processing was logical and relevant, her thought content was appropriate, and her concentration, calculation, and judgment were fair (B15F/3-5). On March 6, 2018, the claimant was working three days a week as a security guard dispatcher (B24F/6). On July 5, September 6, October 3, and December 5, 2018; January 2, February 13, April 10, June 5, July 17, August 28, October 16, and November 27, 2019; and January 29 and March 25, 2020, the claimant's behavior was restless, her affect was blunted, and her mood was depressed, irritable, and/or anxious except that her mood was euthymic beginning in June 2019 (B24F/39, 71, 83, 110; B28F/8, 25, 61; B31F/13, 25, 44, 58, 83; B35F/12, 37). However, she had fair grooming, insight, and judgment and normal speech, associations, recent and remote memory, orientation, attention, concentration, language, fund of knowledge, and thought process (B24F/39-40, 71-72, 83-84, 110-111; B28F/8-9, 25-26, 61-62; B31F/12-13, 25-26, 44-45, 58-59, 84; B35F/12-13, 37- 38). On April 8, 2019, the claimant's mood was anxious, she was agitated, and her affect was labile (B27F/9). However, the claimant was attentive and had normal speech, judgment, cognition, memory, and thought content. On August 7, 2020, the claimant noted that she walked or used public transportation, shopped by phone and by mail, and handled her finances (B17E/3- 4). On December 30, 2020; November 1, 2021; and January 24, April 18, June 13, and November 28, 2022, the claimant's judgment and insight were fair, and her behavior, speech, associations, orientation, recent and remote memory, attention, concentration, language, fund of knowledge, and thought content and process were

> normal (B41F/61-62; B67F/12-13, 56-57, 87- 88; B73F/18-19). The evidence also
> reveals that the claimant is able to get along with others including her sons, friends,
> and neighbors (B17E/5; B4F/2-3; B25F/5; B35F/76, 96, 132; B41F/44; B50F/19,
> 23, 57, 87; B67F/99). Consequently, I give this opinion little weight.

(*Id*. at 6102–03.)

As this discussion demonstrates, the ALJ determined that these opinions were entitled to little weight for three reasons. First, the ALJ determined that they were inconsistent with the medical evidence of record. (*Id*. at 6102.) Substantial evidence supports that explanation as the medical records referenced by the ALJ reflect findings showing that Plaintiff could adequately interact with others. For instance, the ALJ noted that medical records from October 2016 documented that Plaintiff was cooperative; she had intelligible speech that was 100% understandable; she was talkative and initiated conversation frequently; and she had good receptive skills. (*Id*. at 6102.) And indeed, the record reflects these findings. (R. at 957-58.) Likewise, the ALJ correctly noted that records from September 2017 documented that Plaintiff was cooperative and had normal speech and language. (R. at 1175-77.) The also ALJ correctly noted that records from 2018 through 2019 documented that Plaintiff had normal speech and language. (R. at 1451-52, 1483-84, 1495-96, 1522-23, 1729-30, 1746-47, 1782-83, 2437-38, 2450-51, 2469-70, 2483-84, 2509, 2796-97.) In addition, the ALJ correctly noted that a record dated April 8, 2019, documented that Plaintiff was attentive and had normal speech. (R. at 1581.) Further, the ALJ correctly noted that records from 2020 through 2022 documented that Plaintiff's behavior, speech, and language were normal. (R. at 3563-64, 5800-01, 5844-45, 5875-76, 5993-94.)

Second, the ALJ determined that reviewers' opinions were entitled to little weight because they were inconsistent with Plaintiff's activities of daily living. (*Id*. at 6102.) Specifically, the ALJ noted that during the relevant period, Plaintiff worked part time. (*Id*.)

Substantial evidence supports that explanation. As explained by the ALJ, in 2018, Plaintiff worked three days a week as a security guard dispatcher— a job that conceivably required interactions. (R. at 1418.) In addition, the ALJ correctly noted that Plaintiff used public transportation and shopped by phone. (R. at 2282.)

Finally, the ALJ determined that these opinions were entitled to little weight because the record contained evidence that Plaintiff was able to get along with other people including her sons, friends, and neighbors. (*Id*. at 6102.) Substantial evidence supports that explanation as well. (*See*, *e.g.*, R. at 2284, 955-56, 1533, 2860, 2880, 2916, 4570, 4574, 4608, 4638, 5887.)

Plaintiff does not challenge the ALJ's stated reasons for discounting the reviewers' opined social interaction limits. Instead, she urges that ALJ Kessler previously afforded these same opinions great weight, but when crafting her RFC, he omitted their opined superficial interaction limit without adequate explanation, and thus, the matter was remanded. (Pl's Statement of Errors 12, ECF No. 9–10.) She further urges that the new ALJ erred by once again omitting the superficial interaction limit from her RFC without an adequate explanation for doing so. (*Id*.) In actuality, ALJ Kessler previously afforded the opinions great weight, but when crafting Plaintiff's RFC, he limited her to occasional interactions instead of superficial interactions without adequately explaining that substitution. *Sattler v. Comm'r of Soc. Sec*., No. 2:20-CV-3549, 2021 WL 4397867, at *1 (S.D. Ohio Sept. 27, 2021), *aff'd and adopted*, 2021 WL 5299834 (S.D. Ohio Nov. 15, 2021). Here, however, the new ALJ gave the opinions little weight and provided record-based reasons for doing so. In any event, there is no legal requirement for a an ALJ to explain each limit he does not adopt from a non-examining physician's opinion, even when it is given great weight. *Smith*, 2013 WL 1150133, at *11 (citing

*Ford*, 114 F. App'x at 198.)) Accordingly, the Court finds that the ALJ did not reversibly err when assessing the social interaction limits opined by Drs. Murry-Hoffman and Tisher.

Plaintiff also urges that other evidence, including other opinion evidence, supports the superficial interaction limitations opined by Drs. Murray-Hoffman and Tisher. (Pl's Statement of Errors 12, ECF No. 12–13.) But so long as substantial evidence supports the ALJ's findings, this Court must "defer[] to those findings 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakely*, 581 F.3d at 406 (quoting *Key*, 109 F.3d 273). Such is the case here.

## V.     RECOMMENDED DISPOSITION

For all of the foregoing reasons, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 12.)

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a

10

waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE
